IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVE R. SHELDON,<br>          Plaintiff,<br><br>vs.<br><br>SCOTT NEAL, TIMOTHY WILES,<br>BYRON LOCKE, M.L. HENRY,<br>CHRISTOPHER WALSH, JOSEPH<br>KILLGALLON, GEORGE KUZILLA and<br>THE COMMONWEALTH OF<br>PENNSYLVANIA (PENNSYLVANIA<br>STATE POLICE),<br>          Defendants. | Civil Action No. 11-1128<br><br>Judge Joy Flowers Conti/<br>Magistrate Judge Maureen P. Kelly<br><br>[ECF No. 6] |

**REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

On September 6, 2011, Plaintiff Steve R. Sheldon filed a Complaint against the Commonwealth of Pennsylvania (Pennsylvania State Police) and seven state troopers asserting claims arising out of Plaintiff's employment by the Pennsylvania State Police ("PSP"). (ECF No. 1). Presently before the Court is a Partial Motion to Dismiss Plaintiff's Complaint filed by Defendants. (ECF No. 6). For the reasons that follow, it is respectfully recommended that the Motion to Dismiss be granted in part and denied in part.

**II.  REPORT**

    **A.  FACTUAL BACKGROUND**

Plaintiff was employed by the PSP as a trooper beginning on January 3, 1994. On April 6, 2008, he was placed in Troop D, the Vice Unit at PSP Barracks in Butler, Pennsylvania. Plaintiff alleges that since his placement in the Vice Unit, he has been subjected to a "horrendous

1

litany of hostile and discriminatory mistreatments" *(sic)* and disparaging remarks related to his Mexican/Hispanic descent.

On November 6, 2008, Plaintiff complained to the EEO Office of the PSP regarding the harassment and insults directed at him by his supervisor, Defendant Corporal Timothy Wiles ("Wiles"), and other co-workers. At the time of this complaint, the EEO Office was directed by Defendant M.L. Henry ("Henry").

Plaintiff contends that immediately after the filing of his internal complaint, he was treated in a negative and hostile manner by Defendant Wiles and other employees of the PSP. On November 24, 2008, Plaintiff complained directly to Defendant Corporal Joseph Killgallon ("Killgallon") about not being able to work with Wiles due to the treatment he was receiving. Killgallon referred Plaintiff to Defendant Lieutenant Byron Locke ("Locke"). Locke told Plaintiff to see Troop EEOC Officer Thomas Hill ("Hill"). Hill promised to meet with Troop Commander George Kuzilla ("Kuzilla"), also a named Defendant. Plaintiff contends, however, that no one responded to his complaint.

On November 25, 2008, Plaintiff was emotionally distraught and called off sick. Later that day, Plaintiff spoke to Defendant Henry. Henry informed Plaintiff that he was not being retaliated against, to stay at the office and to work with Defendant Wiles. Plaintiff returned to work and was granted an additional week of leave.

Plaintiff alleges a series of incidents of disparate treatment by Wiles and his co-workers between December 2008 and March 2009, and then again on May 28, 2009.

Over four months later, on September 20, 2009, Plaintiff was involved in a serious motor vehicle accident while in a PSP cruiser. The driver of the vehicle that struck the PSP cruiser had a blood alcohol level of .028%. Corporal James Burger ("Burger") initially determined that the

driver of the other vehicle was at fault. Plaintiff alleges that the next day, Defendant Scott Neal ("Neal") instructed Burger to find Plaintiff at fault. Plaintiff alleges this change was retaliatory.

On January 6, 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") at Charge Number 533-200-536 alleging national origin discrimination and retaliation. A charge was also filed with the Pennsylvania Human Relations at Charge Number 200806232.

### B. STANDARD OF REVIEW

The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the United States Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts must then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 566 U.S. at 679. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

## C. DISCUSSION

### 1. The Motion to Dismiss Should Be Granted as to Counts II, III, IV and V against the Commonwealth of Pennsylvania (PSP).

The Commonwealth of Pennsylvania (PSP) seeks to dismiss Counts II, III, IV and V against it on the grounds that the claims are barred by the Eleventh Amendment. In response, Plaintiff, in a brief two paragraph argument, recognizes that sovereign immunity is a bar to his claims, but argues that because he presents a "novel articulation" of his PHRA claim (ECF No. 9, p. 12), he should be permitted to proceed against the Commonwealth. This Court disagrees.

As the Commonwealth correctly recognizes, the Eleventh Amendment to the United States Constitution precludes suits against a state and its agencies in federal court, regardless of the type of relief sought. Kentucky v. Graham, 473 U.S. 159, 165-67 (1985); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984). The Eleventh Amendment provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. It is well settled that the PSP is an agency or arm of the state, and therefore, entitled to the same Eleventh Amendment immunity which the Commonwealth enjoys. Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) citing Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 280 (1977).

There are limited exceptions to Eleventh Amendment sovereign immunity for states and their agencies. States may waive their immunity and consent to be sued; alternatively Congress may abrogate Eleventh Amendment immunity where it unequivocally expresses its intention to do so under a valid exercise of power. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 56-65 (1996). Neither of these exceptions apply in the case at issue.

First, Pennsylvania has not consented to suit in the federal courts, as evidenced by its expressed legislative action at 42 Pa. C.S. §8521(b), where it explicitly reserved its right to immunity from suit in federal court. See also 1 Pa. C.S. §2310; *and see,* Chittister v. Dept. of Community and Economic Development, 226 F.3d 223, 226 (3d Cir. 2000). As to Plaintiff's PHRA claim, although Pennsylvania's General Assembly has waived the state's sovereign immunity to the extent that such suits may be initiated against the Commonwealth in state court, this waiver has not been found sufficient to waive Pennsylvania's Eleventh Amendment immunity in federal court, particularly in light of the express reservation of such immunity found in 42 Pa. C.S. §8521(b).

Similarly, Congress has not abrogated state immunity in Title I of the ADA. Benn v. First Judicial District of Pennsylvania, 426 F.3d 233, 238-39 (3d Cir. 2005) *citing* Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001). Garrett makes clear that to the extent a plaintiff seeks monetary damages against a state defendant under Title I of the ADA, those claims are barred by the Eleventh Amendment. See also McSherry v. Dept. of Labor and Industry, 2006 WL 463157, at *7 (M.D. Pa. 2006); Lewis v. Commonwealth of Pa., 2007 WL 1247076, at *3 (W.D. Pa. 2007).

Accordingly, the Commonwealth of Pennsylvania (the PSP) is entitled to immunity with respect to all of Plaintiff's claims asserted in Counts II, III, IV and V of his Complaint. Consequently, it is recommended that Count II, III, IV and V be dismissed as to the Commonwealth.

### 2. The Motion to Dismiss Should be Granted as to Count II against Defendant Neal.

Count II of Plaintiff's Complaint alleges a cause of action for the violation of the American with Disabilities Act ("ADA"). However, as a result of the recommended dismissal of Count II as to the Commonwealth, the only remaining ADA claim lies against Defendant Scott Neal. Defendant Neal seeks to dismiss this claim on the grounds that: (1) plaintiff failed to exhaust his administrative remedies; (2) there is no individual liability under the ADA; and, (3) Plaintiff has failed to make out a prima facie case of ADA discrimination. In a brief response, without citation to any legal authority, Plaintiff argues that the facts and circumstances could support a finding by a jury that Plaintiff's rights under the ADA were violated. The Court disagrees. Plaintiff cannot disregard the administrative and prima facie requirements of an ADA claim.

#### (a) Plaintiff has failed to exhaust his administrative remedies with regard to his ADA claim.

It is well-established that prior to filing a lawsuit in federal court under the ADA, a Plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC within 300 days of the alleged violation. See Churchhill v. Star Enterprises, 183 F.3d 184, 190 (3d Cir. 1999). Where the allegations in a subsequent federal complaint are sufficiently distinct from those presented in the EEOC charge and were not part of the EEOC's investigation, district courts have required the exhaustion of administrative remedies before a Plaintiff can pursue such allegations. See Antol v. Perry, 82 F.3d 1291 (3d Cir. 1996), and see, Rogan v. Giant Eagle, Inc., 113 F. Supp.2d 777 (W.D. Pa. 2000).

Plaintiff's EEOC Charge of Discrimination and his Affidavit in support of his EEOC charge make clear that Plaintiff did not allege a violation of the ADA with either the EEOC or

the PHRC.  Similarly, Plaintiff's Affidavit makes no reference to the ADA in relation to any of his claims of discrimination or retaliation. As such, Plaintiff cannot argue that the acts alleged in his current Complaint relative to the ADA are within the scope of his prior EEOC charge or any investigation arising therefrom. See Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984).  Given Plaintiff's failure to exhaust his administrative remedies, the remaining ADA claim at Count II of the Complaint against Defendant Neal should be dismissed with prejudice.

### (b) In the alternative, Plaintiff's ADA claim should be dismissed against Defendant Neal because there is no individual liability under the ADA.

It is well established that individuals are not liable under Title I of the ADA. See Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002). An exception exists when an individual is sued for prospective injunctive relief. See Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002). However, Plaintiff does not seek any form of injunctive relief in Count II of his Complaint under the ADA. Accordingly, the remainder of Count II as to Defendant Neal should be dismissed with prejudice.

### (c) In the alternative, Plaintiff has failed to state a *prima facie* case of discrimination under the ADA.

In order to establish a *prima facie* case of discrimination under the ADA, a Plaintiff must demonstrate: (1) that he is a disabled person within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and, (3) that he has suffered an otherwise adverse employment decision as a result of discrimination. See, Sulima v. Tobyhanna Army Dept., 602 F.3d 177, 185 (3d Cir. 2010), *citing* Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999); Gaul v. Lucent Techs., Inc., 134 F.3d 576 (3d Cir. 1998).

7

It is obvious from the face of Plaintiff's Complaint that it does not allege these required elements of an ADA claim. Without a basic showing of the fundamental elements necessary to establish a prima facie case of discrimination under the ADA, however, the ADA claim cannot be sustained and should be dismissed.

### 3. The Motion to Dismiss Should be Granted In Part and Denied in Part as to Count III of Plaintiff's Complaint against the Individual Defendants.

**(a) Continuing Violation Theory**

Count III of Plaintiff's Complaint sets forth two claims against the individual Defendants. First, Plaintiff alleges a claim for the violation of his rights under the First Amendment to the United States Constitution to petition the government for redress of grievances, arising out of alleged retaliation against him because of the discrimination complaints lodged with the PSP EEO on November 6, 2008. Second, Plaintiff alleges the deprivation of his rights to equal protection under the Fourteenth Amendment to the United States Constitution, arising out of Defendants' conduct in subjecting him to a hostile work environment based upon his national origin and complaints of discrimination.

Both claims in Count III, brought pursuant to 42 U.S.C. § 1983, are governed by the personal injury statute of limitations of the state in which they accrued. Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989). In Pennsylvania, the statute of limitations for Section 1983 actions is two years. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009); 42 Pa. Cons. Stat. § 5524(2). Notably, as alleged in Plaintiff's Complaint, all but one instance of alleged unconstitutional conduct occurred well outside the two year statute of limitations, which expired on or before September 9, 2009.[1]

---

[1] The Complaint that initiated this action was filed on September 6, 2011 (ECF No. 1).

To preserve his claims arising out of incidents which fall outside the applicable two year statute of limitations, Plaintiff asserts a "continuing violation" theory. For the reasons set forth below, this theory does not apply, and with the exception of an act by Defendant Neal occurring on October 2, 2009, when Neal allegedly altered the results of an accident investigation, Plaintiff's First and Fourteenth Amendment claims are time barred.

Under the continuing violation theory, a plaintiff may pursue a time-barred claim for discriminatory conduct if he can show that an act is part of an ongoing practice or pattern of discrimination by the defendant. See Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 480-81 (3d Cir. 1997), *citing*, West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). "When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations; in such an instance, the Court will grant relief for the earlier related acts that would otherwise be time-barred." Cowell v. Palmer Township, 283 F.3d 286, 292 (3d Cir. 2001), *quoting* Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).

To assert a claim under this theory, a plaintiff must show that at least one discriminatory act occurred within the filing period and that the harassment was more than isolated or sporadic acts of intentional discrimination as opposed to a persistent ongoing pattern. West, 45 F.3d at 754-755. The United States Court of Appeals for the Third Circuit has adopted at least three factors that should be considered in deciding whether a plaintiff has shown a continuing pattern of discrimination. The first factor involves the subject matter, in terms of whether the violations constitute the same type of discrimination, thus connecting them in a continuing violation. Rush, 113 F.3d at 482. The second consideration is frequency, in terms of whether the acts are recurring or whether they are more in the nature of isolated incidents. Id. A third consideration

that courts should consider is the degree of permanence. Specifically, the inquiry is whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. Id. See, also, Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1983). Courts consider the "degree of permanency" to be the most important of the three factors. See Berry, 715 F.2d at 981.

Courts have utilized the continuing violation theory to rescue untimely claims alleging a hostile work environment in situations where the discriminatory conduct is pervasive and continuous over time. See Rogan v. Giant Eagle, Inc., 113 F. Supp.2d 777, 785 (W.D. Pa. 2000). "The rationale behind finding that a hostile work environment states a continuous violation, is that an employee who works in such conditions may not initially realize that an on and off employment practice has occurred; only when a pattern of incidents emerges over time may it become clear that the earlier practices were not isolated or sporadic." Id. (citations omitted).

Plaintiff, however, does not meet the threshold to establish a continuing violation theory based on the allegations contained in his Complaint and, as such, Plaintiff's claims predating September 6, 2009, are time barred.

The allegations of Plaintiff's Complaint establish that Plaintiff was aware at least in early 2009 that he may have a Section 1983 claim arising out of ongoing adverse employment action. The focus of the continuing violation theory is on the affirmative acts of the Defendants. Cowell, 263 F.3d at 293. Notably, Plaintiff's Complaint at ¶52, asserts that as early as March 5, 2009, he was subjected to several months of alleged discriminatory acts in retaliation for his complaints, including the denial of leave time (November 2008), the denial of a state-owned car for personal use while on leave, the denial of the ability to attend specialized classes (December 2008),

investigations into his work product (December 2008), being required to turn in his vice gear and state funds used for drug buys, etc. (February through March 2009), and being told that he was longer allowed in the vice room unless under the direct supervision of another state trooper (March 2009). Finally, Plaintiff was removed from his vice squad position by March 5, 2009, and thus suffered an adverse employment action. Plaintiff should have been aware at least as early as March 5, 2009, if not sooner, of his potential Section 1983 claims against all Defendants. However, rather than file a Complaint asserting his claims, Plaintiff waited more than two and half years to file the instant action.

      Clearly, by March 2009, Plaintiff suffered several discrete adverse employment acts, which triggered a sufficient degree of awareness of the violation of his rights to commence suit pursuant to Section 1983. An assessment of the "degree of permanence" of the Defendants' alleged acts in this case warrants a finding that Plaintiff had a duty to assert his rights well before September 9, 2011, in order to timely file his claims within the two-year statute of limitations period for bringing §1983 claims. See *generally* Cowell, *supra*. The continuing violation theory cannot be used as a means for relieving Plaintiff from his duty to exercise reasonable diligence in pursuing his claims. It follows that since Plaintiff cannot employ the continuing violation theory to preserve all of his claims as to all incidents that fall outside the statute of limitations, Plaintiff's claims against Defendants Wiles, Locke, Henry, Walsh, Killgallon and Kuzilla asserted in Count III of his Complaint should be dismissed. The only claim within the applicable statute of limitations is that asserted against Defendant Neal, for allegedly altering the outcome of an investigation on October 2, 2009.

**(b) Claims as to Defendant Neal**

In the alternative, Defendant Neal asserts qualified immunity as a complete defense to Plaintiff's remaining claim against him. The qualified immunity doctrine protects government officials from liability for civil damages to the extent that their conduct does not infringe what a reasonable person would have known were clearly established statutory or constitutional rights. Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012), *citing*, Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations and quotation marks omitted); see also Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Ray, 626 F.3d at 173–74. Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability. See Pearson, 555 U.S. at 244, 129 S.Ct. 808.

In Saucier v. Katz, the Supreme Court established a two-part analysis for determining when qualified immunity is applicable: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was "clearly established." 533 U.S. 194, 201 (2001), *overruled in part by* Pearson, 555 U.S. at 236 (relaxing the Saucier analysis by no longer requiring courts to determine the Saucier prongs in sequential order. A right is clearly established for qualified immunity purposes where its contours are "sufficiently

clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202; see also Williams v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006).

Here, because Motion to Dismiss is resolved based on the allegations pled in the Complaint, "[t]he limited record before this Court precludes us from making such a determination." Schrob v. Catterson, 948 F.2d 1402, 1420–21 (3d Cir. 1991) (holding that a determination of "objective reasonableness of [state] actor's conduct" element of qualified immunity analysis precludes determination on a motion to dismiss) (referencing Brown v. United States, 851 F.2d 615, 619–20 (3d Cir. 1988) (holding that the record provided insufficient basis for resolution of qualified immunity issue.)) Furthermore, the United States Court of Appeals for the Third Circuit has stated that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage, as it [is] necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 Fed. Appx. 788, 791 n. 3 (3d Cir. 2009); Perano v. Arbaugh, 2011 WL 1103885, at *17 (E.D. Pa. March 25, 2011).

With regard to Neal's assertion of this defense, "[a]t the 12(b)(6) stage, qualified immunity will be found 'only when the immunity is established on the face of the complaint.'" Cunningham v. Versailles Twp., No. 09–1314, 2010 WL 391380 (W.D. Pa. Jan. 27, 2010) (*citing* Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006)). In other words, if on the face of the complaint, Plaintiff "fails to state a claim of a violation of a clearly established law, 'a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.' " Cunningham, 2010 WL 391380 (*quoting* Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

In this case, the Court finds that the Complaint has sufficiently stated a claim of a violation of an established constitutional right against Neal pursuant to Section 1983. Thus, Neal

does not satisfy the requirements for a qualified immunity defense at this early stage in the litigation.

### 4. The Motion to Dismiss Should be Denied as to Count IV – Violation of Section 1981 – against the Individual Defendants.

In order to state a cognizable claim under 42 U.S.C. §1981, which protects, inter alia, the right to make and enforce contracts, plaintiffs are required to allege (1) that they are members of a racial minority; (2) that defendants intentionally discriminated against them on the basis of their race; and, (3) that the discrimination was directed toward one or more of the activities protected by the statute. Mian v. Donaldson, Lufkin & Jenrette Securities, 7 F.3d 1085 (2nd Cir. 1993). Since §1981 was amended by Title I of the Civil Rights Act of 1991, §101, 42 U.S.C.A. §1981(b), contract rights protected by Section 1981 encompass the performance, modification, termination, and, generally, "enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." In addition, the rights enumerated in the statute are clearly and specifically protected against encroachment by private, as well as state, action. Section 1981(c).

Personal liability under Section 1981 must be predicated on the actor's personal involvement and, consequently, there must be some affirmative link to causally connect the actor with the discriminatory action. Johnson v. Resources for Human Dev., Inc., 843 F. Supp. 974, 978 (E.D. Pa. 1994). For example, individuals may be held liable under Section 1981 for their personal involvement in discrimination if they authorized, directed, or participated in the alleged discriminatory conduct. Al-Khazraji v. St. Francis College, 784 F.2d 505, 518 (3d Cir. 1986) (emphasis added). Of note, there must be some active infringement of rights protected by Section 1981. Id.

In the Motion to Dismiss, Defendants argue that Plaintiff has made only a generic allegation at Paragraph 83 of Count IV that all of the Defendants "have mistreated the plaintiff and all have acted to deny him, based upon race/ethnicity, the right to enjoy the benefits and emoluments of his contracts." (ECF No. 1). Defendants further assert that Plaintiff has failed to make sufficient allegations against specific Defendants.

In response, Plaintiff contends that he has sufficiently alleged numerous actions by the Defendants, most of whom were PSP supervisors, which constituted interference by the individual Defendants with Plaintiff's contractual relationship with the PSP.

A review of the Complaint, in particular, the "Rights Violated" and "Operative Facts" sections, reveals that Plaintiff has set forth sufficient averments concerning the conduct of the individual Defendants in violation of Section 1981 to render his claim viable at this early stage of the litigation. Accordingly, the Motion to Dismiss as to Count IV is denied.

    **5.**    **The Motion to Dismiss Count V should be granted as to all of the Individual Defendants except Defendant Wiles.**

To bring suit under the Pennsylvania Human Relations Act ("PHRA"), a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination. 43 Pa.C.S. §§ 959(a), 962. If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA. Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). Pennsylvania courts have strictly interpreted this requirement, and have repeatedly held that "persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act." Vincent v. Fuller Co., 616 A.2d 969, 974 (Pa. 1992); see also Richardson v. Miller, 446 F.2d 1247, 1248 (3d Cir.

1971) ("since plaintiff failed to file a charge with the respective Commissions within the appropriate time periods, he is now foreclosed from pursuing the remedies provided by the Acts.").

As the Pennsylvania Supreme Court has explained, the Pennsylvania legislature created with the PHRA a "procedure and an agency specially designed and equipped to attack this persisting problem and to provide relief to citizens who have been unjustly injured thereby." Woodson, 109 F.3d at 925, *citing* Fye v. Central Transp. Inc., 409 A.2d 2, 4 (Pa. 1979).

In the case at issue, Plaintiff filed a Charge of Discrimination and Retaliation pursuant to Title VII with the EEOC and PHRC on or about January or February 2009, However, the charge was only filed against the Commonwealth of Pennsylvania and the PSP. In this charge, Plaintiff makes no reference or any allegation against any of the other individually named Defendants in this lawsuit except for Defendant Wiles. Similarly, in his Affidavit in support of his EEOC charge, none of the other individual Defendants are mentioned. As a result, these individual Defendants allege that Plaintiff has not exhausted all of his administrative remedies against them.

In his Brief in Opposition to Defendants' Partial Motion to Dismiss, Plaintiff, in two short sentences, asserts that he "has made a proper PHRA claim" and this Court "should permit discovery." Plaintiff completely fails to address the issue of exhaustion of administrative remedies. Viewing the averments of the Complaint in the light most favorable to Plaintiff, it is clear that Plaintiff failed to file an administrative charge against the individual Defendants, other than Defendant Wiles. Plaintiff, therefore, has failed to exhaust his administrative remedies and the Motion to Dismiss Count V as to each individual Defendant except Defendant Wiles should be granted.

## IV. CONCLUSION

For the foregoing reasons, is respectfully recommended that the Motion to Dismiss [ECF No. 6] be granted in part and denied in part. In particular, it is recommended as follows:

a) It is recommended that Count II, Plaintiff's ADA claims, be dismissed as to the PSP and Defendant Neal;

b) It is recommended that Count III, Plaintiff's First and Fourteenth Amendment claims, be dismissed as to the PSP and all individual Defendants, with the exception of Defendant Neal, against whom Plaintiff has adequately pleaded a claim for allegedly altering the outcome of an investigation on October 2, 2009;

c) It is recommended that Count IV, Plaintiff's Section 1981 claim, be dismissed as to the PSP, but that the Motion to Dismiss be denied as to the individual Defendants, against whom Plaintiff has adequately pleaded a claim;

d) It is recommended that Count V, Plaintiff's supplemental state claim pursuant to the PHRA, be dismissed as to all Defendants with the exception of Defendant Wiles, the sole Defendant against whom Plaintiff has properly exhausted his state administrative remedies.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193

n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: August 28, 2012

cc: The Honorable Joy Flowers Conti
United States District Judge

All counsel of record by Notice of Electronic Filing